Edward A. Broderick (*pro hac vice*)
ted@broderick-law.com
Broderick Law, P.C.
176 Federal Street, Fifth Floor
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Anthony I. Paronich (*pro hac vice*)
anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Matthew P. McCue (*pro hac vice*)
mmccue@massattorneys.net
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Andrew W. Heidarpour (*pro hac vice*)
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiffs Louis Floyd and Terry Fabricant, and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LOUIS FLOYD and TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST DATA MERCHANT SERVICES LLC,<br><br>SAM'S CLUB MERCHANT SERVICES, NATIONAL PAYMENT SYSTEMS LLC, and NATIONAL PAYMENT SYSTEMS OR, LLC d/b/a/ ONE CONNECT PROCESSING,<br><br>Defendants. | Case No. 5:20-cv-02162-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: October 6, 2022<br>Hearing Time: 9:00 a.m.<br>Courtroom: San Jose Courthouse, Courtroom 4—5th Floor, 280 South 1st Street, San Jose, CA 95113<br>Judge: Hon. Edward J. Davila<br>Complaint Filed: March 30, 2020 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2022 at 9:00 a.m. or as soon thereafter as this matter may be heard on October 6, 2022 at 9:00 a.m. in Courtroom 4, 5th Floor of the United States District Court for the Northern District of California Robert F. Peckham Federal Building & United States Courthouse 280 South 1st Street, San Jose, CA 95113, Plaintiffs Louis Floyd and Terry Fabricant ("Plaintiffs") will present their Unopposed Motion for Final Approval of Class Action Settlement.

Plaintiffs will move the Court for final approval of their class action settlement, which received preliminary approval from the Court on March 17, 2022. The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Eric Nordskog ("Nordskog Decl." attached hereto as Exhibit 1), the records and file in this action, and on such other matters as may be presented before or at the hearing of the motion.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

    A.    Prior Actions ................................................................................................ 2

    B.    This Action and Settlement Negotiations ..................................................... 3

    C.    Preliminary Approval .................................................................................. 4

    D.    Notice and Claims ....................................................................................... 5

III.    ISSUES TO BE DECIDED ................................................................................. 6

IV.     ARGUMENT AND AUTHORITY ..................................................................... 6

    A.    The settlement should be approved as fair, reasonable and adequate ................. 6

        1.    The relief provided by the settlement taking into account the
strength of Plaintiffs' case favors approval. ................................ 7

        2.    The risk, cost, and delay of trial and appeal favors final approval ........... 9

        3.    The risk of maintaining class action status through trial ......................... 9

        4.    The amount offered in settlement ............................................................ 10

        5.    The extent of discovery and stage of proceedings favor final
approval ....................................................................................... 11

        6.    The experience and views of counsel favor final approval ................... 11

        7.    There is no governmental participant but the CAFA notice drew no
objections, which favors final approval ................................ 11

        8.    The Class's response favors approval ................................................... 12

    B.    The Rule 23(e)(2) considerations favor approval ................................. 12

    C.    The notice program complied with Rule 23 and due process ...................... 14

V.      CONCLUSION .................................................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................12

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .........................................................................11

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................6, 13

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................10

*Chavez v. PHC Corp.*,
   No. 13-cv-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015) ..................15

*Cooley v. First Data Merchant Servs., LLC*,
   Case No. 1:19-cv-01185-TWT (N.D. Ga.) ..............................................................3

*Custom LED, LLC v. eBay, Inc.*,
   No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ....................9

*In re DISH Network, LLC*,
   28 FCC Rcd. 6574 (2013) ........................................................................................8

*Fabricant v. United Card Solutions, LLC*,
   Case No. 2:18-cv-01429 (C.D. Cal. Feb. 21, 2018) ................................................2

*Floyd v. First Data Merchant Servs. LLC*,
   Case No. 5:20-cv-02162 (N.D. Cal. Mar. 30, 2020) ...............................................3

*Hawthorne v. Umpqua Bank*,
   No. 11-cv-6700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014) ...................15

*Johnson v. Quantum Learning Network, Inc.*,
   No. 15-cv-5013-LHK, 2017 WL 747462 (N.D. Cal. Feb. 27, 2017) ......................9

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) ...................................................................................8

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................11

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ...................................................................................10

*Kristensen v. Credit Payment Servs. Inc.*,
   879 F.3d 1010 (9th Cir. 2018) ......................................................................................8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................................................9

*Lushe v. Verengo Inc.*,
   No. CV 13-07632 AB R (C.D. Cal. May 2, 2016), ECF Nos. 135-1, 137 ...........................10

*Makaron v. GE Security Mfg. Co.*,
   No. CV-14-1274-GW, 2015 WL 3526253 (C.D. Cal. May 18, 2015).................................8

*Markos v. Wells Fargo Bank, N.A.*,
   No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) ...............................10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................................................11

*In re Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010). ECF No. 73 ....................................................................14

*In re Monitronics*,
   223 F. Supp. 3d 514 (N.D. W. Va. 2016)........................................................................8

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
   No. 1:13-md-02493-JPB-JES (N.D.W.V. June 12, 2018), ECF No. 1214 ...........................9

*Moore v. Verizon Commc'n Inc.*,
    No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .................................12

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ...................................................................................................15

*In re Online DVD Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .......................................................................................12

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   No. C13-1347-JCC (W.D. Wash. April 19, 2016), Dkt. Nos. 147, 151................................10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................6

*Rose v. Bank of Am. Corp.*,
   No. 11 Civ. 02390, 12 Civ. 04009, 2014 WL 4273358 (N.D. Cal. Aug. 29,
   2014)..........................................................................................................................10

*Steinfeld v. Discover Fin. Servs.*,
    No. C 12-01118, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014) ..................................10

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...........................................................................................6

*Tadepalli v. Uber Techs., Inc.*,
    No. 15-CV-04348-MEJ, 2016 WL 1622881 (N.D. Cal. Apr. 25, 2016)...........................12

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) ...........................................................................8

**Federal Statutes**

47 U.S.C.
    § 227(b)(1)(A)(iii) ..........................................................................................................2
    § 227, *et seq.*..................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................14

Fed. R. Civ. P. 23(b)(3) .........................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................14

Fed. R. Civ. P. 23(e) ...............................................................................................................6

Fed. R. Civ. P. 23(e)(1) .........................................................................................................14

Fed. R. Civ. P. 23(e)(2) ...............................................................................................7, 12, 13

Fed. R. Civ. P. 23(e)(3) .....................................................................................................7, 14

Fed. R. Civ. P. 23(f) ................................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Plaintiffs Louis Floyd and Terry Fabricant move for final approval of their settlement with Defendants First Data Merchant Services LLC, Sam's Club Merchant Services, National Payment Systems, LLC and National Payment Systems OR, LLC d/b/a One Connect Processing (collectively "Defendants") in this class action brought under the Telephone Consumer Protection Act. Defendants have agreed to pay $1,600,000 to establish a non-reversionary Settlement Fund that will be distributed to Settlement Class Members who filed timely and valid claims.

The Notice Plan approved by the Court has been implemented by the parties and the Court-approved Settlement Administrator, AB Data, Ltd. The Direct Mail Notice was successfully delivered to 99% of identified Settlement Class Members. The reaction of the Settlement Class has been very positive. There are no objections to the settlement, nor did a single Settlement Class Member opt out. 3,577 valid claims have been filed. While the distribution of the Settlement Fund will not be finalized until the Court rules on the motion for attorneys' fees, should the Court approve the requested incentive awards, attorneys' fees and expenses and administration expenses, Settlement Class Members who filed valid claims will receive an estimated payment of $208 per affected telephone number.

All of the factors that courts consider support granting final approval of the settlement. The relief provided by the settlement is significant, particularly given the risk and expense of continued litigation. The settlement ensures that class members are compensated without delay and eliminates the risk of loss at trial or on appeal. Having litigated through fulsome discovery, the parties are fully apprised of the strengths and weaknesses of the claims and defenses. Class

Counsel have successfully litigated many TCPA cases and fully support the settlement. And that no class members objected further supports final approval of the settlement.

Plaintiffs request that the Court certify the Settlement Class for settlement purposes and approve the settlement as fair, reasonable and adequate.

## II.    BACKGROUND

### A.    Prior Actions

This case arises from a campaign of unsolicited telemarketing using automated dialers and prerecorded messages that Plaintiffs allege was conducted on behalf of First Data by NPS through its subsidiary NPS-OR in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) promoting credit card processing services, as well as First Data's own utilization of similar technology to make calls promoting Sam's Club. NPS and NPS OR deny that the latter is a subsidiary of NPS. The TCPA prohibits making any call using an "artificial or prerecorded voice" . . . to any telephone number assigned to a cellular telephone service. Plaintiffs allege that NPS OR made prerecorded calls to Louis Floyd, and a proposed class of individuals on their cell phones without their prior express written consent. NPS-OR made the calls through a calling entity known as Voiceless Technologies, Inc., to which NPS-OR provided telephone numbers for Voiceless to call. Plaintiffs also allege that First Data contacted a much smaller population of potential customers on behalf of Sam's Club also employing prerecorded messages, one of which was received by Plaintiff Terry Fabricant. ECF 1.

This lawsuit is only the latest in a series of cases relating to illegal telemarketing by the Defendants. The first case, *Fabricant v. United Card Solutions, LLC*, Case No. 2:18-cv-01429 (C.D. Cal. Feb. 21, 2018) ("*United Card*") was served on February 26, 2018. *United Card* was settled on an individual basis (based on false representations about the financial condition of

"United Card Solutions" without even disclosing that United Card Solutions was in fact a d/b/a of NPS and "United Card Solutions" incorrect claim that it had no records evidencing pre-recorded calls it made) and was dismissed on September 28, 2018. First Data was not a party to this action.

The second case was *Cooley v. First Data Merchant Servs., LLC*, Case No. 1:19-cv-01185-TWT (N.D. Ga.) ("*Cooley*"). It was served on March 19, 2019 and dismissed without prejudice for lack of personal jurisdiction on February 2, 2020. The third and present case is a direct follow on to *Cooley* and was filed on March 20, 2020.

### B.     This Action and Settlement Negotiations

Immediately upon filing the original Complaint, Plaintiffs continued their intensive investigation into Defendants' telemarketing practices. Plaintiffs' served requests for production of documents and interrogatories on First Data, NPS and NPS-OR, as well as subpoenas to Voiceless Technologies, Inc., the third-party dialing platform used to make the calls and Data Axle, the data provider that sold leads for calling. Broderick Dec. ¶ 7 (ECF 69-2). The parties negotiated a protective order which was approved by the Court, and then engaged in an extensive negotiation over an ESI protocol. *Id.* ¶ 8. Defendants produced an extraordinary volume of discovery, over 1.8 million documents, all of which were reviewed by Plaintiffs' counsel. This action was hard fought beyond the fact that it involved voluminous discovery. Indeed, NPS-OR took the extraordinary step of filing a lawsuit in the Los Angeles Superior Court NPS-OR, *Floyd v. First Data Merchant Servs. LLC*, Case No. 5:20-cv-02162 (N.D. Cal. Mar. 30, 2020) against Terry Fabricant and his counsel. NPS-OR pursued a theory that Mr. Fabricant's individual settlement of the *United Card* case in the Central District of California barred him from filing the present case, even though this action was based on a call

that *post-dated* the individual settlement by many months, and the individual settlement explicitly did not apply to claims based on future violations. The Los Angeles Superior Court action was dismissed on an anti-SLAPP motion. *Id.* ¶¶*8-9.*

Plaintiff's discovery efforts were hampered by the loss of a significant portion of the calling records by Voiceless Technologies, Inc. *Id.* ¶ 9. After extensive work on the lead data that Plaintiffs were able to secure through discovery, Plaintiff retained an expert witness, Aaron Wolfson, to identify which of the phone numbers that had been sent to Voiceless Technologies for the delivery of a prerecorded message were assigned to a cellular telephone service at the time of delivery of the data. *Id.* Mr. Wolfson identified 142,243 leads that included cell numbers at the time of their transmittal for dialing. *Id.* This, in addition to the limited calling data that was preserved, including 2,340 calls directly by First Data, is how Plaintiff were able to identify the class of individuals who received prerecorded calls on their cellular telephones. *Id.* ¶.

Armed with a sufficient understanding of the strengths and weaknesses of their case to enter into settlement negotiations, the parties proceeded to mediate with the Honorable Louis M. Meisinger (Ret.) of JAMS in Los Angeles *Id.* ¶ 10. The parties then negotiated the terms of their settlement.

### C.    Preliminary Approval

Plaintiffs initially moved for preliminary approval on October 13, 2022 (ECF 59). That motion was heard on February 10, 2022, at which hearing the Court ordered revisions to the Settlement Agreement and motion for preliminary approval. The Parties made revisions to the Settlement and Plaintiffs amended their preliminary approval motion, which was filed on February 22, 2022. *See* ECF 66. On February 24, 2022, the Court held a hearing on Plaintiffs'

amended motion on February 24, 2022 and ordered submission of additional information regarding he settlement. Plaintiffs submitted further revisions to the settlement agreement and preliminary approval motion on March 14, 2022. *See* ECF 69. On March 17, 2022, the Court held a hearing on the further revised motion and granted preliminary approval the same day. *See* ECF 70 and 72.

### D.    Notice and Claims

AB Data implemented the Notice Plan outlined in the Settlement Agreement and approved by the Court. The Direct Mail Notices successfully reached approximately 99% of the Settlement Class. To supplement direct Notice efforts, beginning on April 15, 2022, A.B. Data caused digital banner and newsfeed ads to appear on various websites and social media platforms. These banner ads were placed on the Google Display Network and on social media channels such as Facebook, Instagram, and YouTube. These ads appeared on both desktop and mobile formats. These ads were viewed by 95,981,361 users and accumulated 54,668 ad clicks. Nordskog Decl. ¶ 18. The deadline for Settlement Class Members to submit or file a Claim Form was July 15, 2022. To date, AB Data has received 3,577 valid claim forms. The current number of eligible claims represents a claim filing rate of approximately 2.5% of the number of Postcard Notices mailed. *Id.* ¶ 21. To date, 4,860 claims which have been preliminarily deemed ineligible as they were not part of the Class List or were considered a questionable claim after review against A.B. Data's database of known questionable filers. A.B. Data continues to undertake programmatic and manual audits, and quality assurance reviews to identify duplicate, additional eligible claims, and invalid claims. claims were deemed fraudulent. *Id.* ¶ 22.

If the Court awards the requested attorneys' fees, costs, and service awards, a total of $744,048,98 will be distributed to Settlement Class Members who file valid claims. Based on

these current valid claims, the estimated payment per telephone number will be $208.

Nordskog Decl. ¶ 25.

### III.    ISSUES TO BE DECIDED

Whether the settlement should be approved as fair, reasonable, and adequate and whether the Settlement Class should be finally certified for settlement purposes.

### IV.    ARGUMENT AND AUTHORITY

#### A.    The settlement should be approved as fair, reasonable and adequate

Settlements are favored, particularly in the class action context. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). Courts recognize that a settlement approval hearing should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009).

Proposed class action settlements are not effective unless approved by the Court. Fed. R. Civ. P. 23(e). When deciding whether to find a class settlement to be fair, reasonable, and adequate, courts consider (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

In addition, under the amendments to Rule 23(e), courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

All of these factors support a finding that the settlement is fair, reasonable, and adequate.

### 1. The relief provided by the settlement taking into account the strength of Plaintiffs' case favors approval.

Defendants have agreed to pay $1,600,000 million to settle Plaintiffs' and Settlement Class Members' TCPA claims. After payment of Court-approved settlement administration expenses, attorneys' fees and expenses, and service awards to the Plaintiffs, the remainder of the Settlement Fund will be distributed to the Settlement Class Members who filed timely and valid claim forms. If the Court approves the requested Settlement Administration Expenses of $269,000, Service Awards of $5,000 to each of the Class Representatives, requested attorneys' fees of $533,280 and litigation expenses of $43,671.02, a total of $744,048.98 will be distributed to Settlement Class Members who filed valid claims. Based on 3,577 valid claims, the payment per telephone number will be $208. Nordskog Decl. ¶ 25.

While Plaintiffs believe they have a strong case for liability, trial is always risky. *See* Broderick Decl. ECF 69-2. Success was certainly not guaranteed. Nearly all of allegedly illegal calls at issue were not made by First Data directly. Rather, they were made be telemarketing

vendors working on First Data's behalf, and even those vendors were at least two degrees removed from First Data. In other words, this was not a case of direct liability. For Plaintiffs to hold First Data to account for calls made by third parties, they would have to prove that First Data was vicariously liable for the actions of its agents. *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (explaining factors to consider in assessing vicarious liability of a principal for acts of an agent). Although Plaintiffs were prepared to do so, the risks of holding First Data vicariously liable for the actions of its agents was significant, especially in light of the fact it appeared First Data did not have actual knowledge of NPS or NPS OR's violative conduct. *See* Broderick Decl. 69-2 ¶ 11. Class Counsel know from their experience litigating TCPA cases that proving vicarious liability can be challenging, and recent Ninth Circuit authority confirms these challenges. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014-15 (9th Cir. 2018) (affirming summary judgment of TCPA claims where plaintiff failed to provide sufficient evidence of vicarious liability); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 453 (9th Cir. 2018) (same); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1086 (C.D. Cal. 2012) (dismissing TCPA claims because the plaintiff failed to show the defendant controlled franchisee's telemarketing activity), *aff'd*, 879 F. App'x 678 (9th Cir. 2014); *see also Makaron v. GE Security Mfg. Co.*, No. CV-14-1274-GW (AGRx), 2015 WL 3526253, at *10 (C.D. Cal. May 18, 2015) (granting defendant's motion for summary judgment because plaintiff failed to prove manufacturer vicariously liable for dealers' telemarketing violations); *In re Monitronics*, 223 F. Supp. 3d 514, 520 (N.D. W. Va. 2016) (same), *aff'd sub nom Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). The absence of calling records also seriously complicated Plaintiffs' burden of proving their case at trial against any of the Defendants.

Further, NPS OR had stopped operations in January 2020 because of ongoing cash and profitability issues. NPS' revenues also have been seriously impacted due to loss of major revenue streams. Both companies had very limited financial resources, which would impact the ability to secure and then collect on a judgment. When combined with the usual risks and expense of litigation, and class litigation in particular, a settlement that ensures payments to class members now is far preferable to the possibility of no recovery after the significant delay of proceeding to trial and appeal. *See Johnson v. Quantum Learning Network, Inc.*, No. 15-cv-5013-LHK, 2017 WL 747462, at *1 (N.D. Cal. Feb. 27, 2017) ("Courts have noted that uncertainty favors approval of a settlement."). In light of these significant legal challenges, the Settlement reached here is an excellent result.

**2.    The risk, cost, and delay of trial and appeal favors final approval**

Plaintiffs faced multiple hurdles to clear before they could actually recover damages through further litigation. Plaintiffs would not only have to prevail at trial, but also retain any favorable judgment through the appellate process. It is because almost all class actions involve a high level of risk, expense, and complexity that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Litigating this case to trial and through any appeals would be expensive and time-consuming and would present risk to both parties. The Settlement, by contrast, provides prompt and certain relief for Settlement Class Members.

**3.    The risk of maintaining class action status through trial**

Certification of this case was not a certainty, and even if it was granted an appeal under Fed. R. Civ. P. 23(f) would be sure to follow. This counsels in favor of preliminary approval. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014).

1

### 4.    The amount offered in settlement

2

Defendants have agreed to pay $1,600,000 to settle class members' claims. Each

3

participating Member of the Settlement Class will receive an equal cash payment. Settlement

4

Class members who submitted valid claims will receive approximately $208. *See* Nordskog

5

Decl. ¶ 19. Courts routinely approve settlements of TCPA claims when class members receive

6

far lower payments. *See In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.,* No. 1:13-

7

md-02493-JPB-JES (N.D.W.V. June 12, 2018), ECF No. 1214 (approving settlement where

8

class members received approximately $38); *Lushe v. Verengo Inc*., No. CV 13-07632 AB R

9

(C.D. Cal. May 2, 2016), ECF Nos. 135-1, 137 (approving settlement where claimants received

10

$52); *Rinky Dink, Inc. v. Elec. Merch. Sys*., No. C13-1347-JCC (W.D. Wash. April 19, 2016) ,

11

Dkt. Nos. 147, 151 (approving settlement where claimants received $97); *In re Capital One*

12

*TCPA Litig*., 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where class

13

members were awarded $39.66); *Rose v. Bank of Am. Corp.*, No. 11 Civ. 02390, 12 Civ. 04009,

14

2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA

15

settlements and approving settlement that paid $20 to $40 per claimant); *Kolinek v. Walgreen*

16

*Co*., 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (approving settlement where class members

17

received payments of $30); *Steinfeld v. Discover Fin. Servs*., No. C 12-01118, 2014 WL

18

1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be

19

between $20 and $40); *Markos v. Wells Fargo Bank, N.A*., No. 1:15-cv-01156-LMM, 2017 WL

20

416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement with payments of approximately

21

$24 per class member as an "excellent result").

22

23

24

25

26

27

28

**5.    The extent of discovery and stage of proceedings favor final approval**

For this factor, courts look to whether the parties have sufficient information to make an informed decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, the parties engaged in extensive litigation and fulsome discovery prior to proceeding to mediation which placed them in a sufficient position to make an informed decision with respect to settlement. *See* Broderick Decl., ECF 69-2.

**6.    The experience and views of counsel favor final approval**

Class Counsel have extensive experience litigating and settling class actions, and TCPA class actions in particular, and all believe the Settlement represents an excellent result for the class and merits preliminary approval. *See* Declarations of Counsel at ECF 69-2 and 69-4 to 69-6. The recommendation of experienced counsel weighs in favor of granting final approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citing counsel's experience and recommendation as weighing in favor of approval). The fact that qualified and well-informed counsel endorse the settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.

**7.    There is no governmental participant but the CAFA notice drew no objections, which favors final approval**

There is no governmental participant in the case, but the CAFA notice did not draw any objections. Nordskog Decl. ¶ 6. This factor further supports final approval.

1

### 8.    The Class's response favors approval

2    There are no objections to this settlement. Notice of the settlement was distributed by

3    mail to 138,725 Settlement Class Members and not one objected. Nordskog Decl. ¶¶ 17, 24. A

4    court may appropriately infer that a class settlement is fair, reasonable, and adequate when few

5    (or no) class members object to it. *See Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ,

6    2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (observing that "the absence of a large

7    number of objections to a proposed class action settlement raises a strong presumption that the

8    terms of a proposed class settlement action are favorable to the class members" (citation

9    omitted)).

10

11    Settlement Class Members instead chose to participate in the settlement, filing 3,577

12    valid claims. Nordskog Decl. ¶ 21. Moreover, none of the Settlement Class Members chose to

13    opt out. *Id.* ¶ 23. That Settlement Class Members chose to participate supports approval. *See,*

14    *e.g., In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming

15    approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed

16    claims); *Moore v. Verizon Commc'n Inc.,* No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D.

17    Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate); *see*

18    *also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320-21 (N.D. Cal. 2018) (finding

19    that low rates of objections and opt-outs are 'indicia of the approval of the class'" (citation

20    omitted)).

21

### B.    The Rule 23(e)(2) considerations favor approval

22    The considerations outlined in Rule 23(e)(2) also support final approval of the

23    settlement. Rule 23(e)(2) provides in relevant part:

24

25

26
> If the proposal would bind class members, the court may approve
> it only after a hearing and only on finding that it is fair,

27
> reasonable, and adequate after considering whether:

28

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

All of these considerations are met by the Settlement before the Court. The first consideration is the adequacy of Plaintiffs' and their counsel's representation of the Settlement Class. In granting preliminary approval of the settlement, the Court considered and approved, among other things, the adequacy of Plaintiffs and their counsel. ECF No. 72 ¶ 4(d). Plaintiffs committed significant time to this case and support the settlement. ECF Nos. 73-1. ¶ 11. Class Counsel, who have a great deal of experience litigating and settling TCPA class action cases, also wholeheartedly support the settlement. This consideration therefore supports approval.

The second consideration also supports approval because the settlement was negotiated at arms' length and settled with the assistance of an experienced mediator. None of the "red flags" of potential collusion the Ninth Circuit has identified exist in this case. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (noting that plaintiffs' counsel may have allowed pursuit of their own self-interest to infect settlement negotiations when they receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart

from class funds, or the parties agree that any fees not awarded will revert to defendants rather than be added to the class fund).

As set forth above, the relief provided to class members greatly exceeds typical TCPA settlements, particularly in light of the risks of continuing to litigate through trial and an appeal. The method for distributing relief to class members filing valid claims has already been approved by the Court on preliminary approval.

As to Rule 23(e)(2)'s third consideration, Plaintiffs addressed the reasonableness of the requested attorneys' fees in the motion they filed on June 1, 2022, which was 44 days before the deadline for Settlement Class Members to opt out or object in compliance with the Court's Procedural Guidance for Class Action Settlements and *In re Mercury Interactive Corp.*, 618 F.3d 988, 994 (9th Cir. 2010). ECF No. 73.

Finally, the fourth consideration—whether the proposed settlement treats class members equitably relative to each other—also supports approval. The method for distributing the Settlement Fund to Settlement Class Members is simple, straightforward, and equitable. After Court-approved deductions for administrative costs, attorneys' fees and costs, and Service Awards, the remaining funds will be divided equally among the valid claims submitted.[1]

### C.    The notice program complied with Rule 23 and due process

The settlement notice program approved by the Court and implemented by AB Data satisfied the requirements of Rule 23 and due process. Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the

---

[1] The Parties' sole agreement is the Settlement before the Court, so the requirement of Rule 23(e)(3), requiring a statement identifying any agreement made in connection with the settlement, is not implicated.

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. 5:20-cv-02162-EJD

proposal." Fed. R. Civ. P. 23(e)(1). When the class is certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with constitutional due process standards, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Court approved the Direct Mail Notice in granting preliminary approval of the settlement. ECF No. 72 ¶ 14. The notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" and described "the action and the plaintiffs' rights in it." *Hawthorne v. Umpqua Bank*, No. 11-cv-6700-JST, 2014 WL 4602572, at *6 (N.D. Cal. Sept. 15, 2014) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). The notice was written in plain English and included the dates for class members to object and the final approval hearing. *See Chavez v. PHC Corp.*, No. 13-cv-01797-LHK, 2015 WL 581382, at *6 (N.D. Cal. Feb. 11, 2015) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

AB Data sent the Direct Mail Notice by U.S. Mail to 138,725 Settlement Class Members. Nordskog Decl. ¶ 9. In total, 137,766 Direct Mail Notices were successfully delivered, representing 99% of the identified Settlement Class Members. *Id.* ¶ 11. AB Data also placed banner advertisements on a variety of websites, including the Google Display Network and on social media channels such as Facebook, Instagram, and YouTube. *Id.* ¶ 12. These ads

appeared on both desktop and mobile formats. *Id.* These ads were viewed by 95,981,361 users and accumulated 54,668 ad clicks. *Id.*

AB Data established a settlement website with detailed information about the settlement. *Id.* ¶ 13. The website address was printed on all notices. *Id.* Located at www.FirstDataMerchantTCPASettlement.com, the website had 43,997 hits as of August 10, 2022. *Id.* The website lists important dates and class members' rights and options, includes frequently asked questions and key documents from the case like the settlement agreement and motion for attorneys' fees, and allowed class members to submit an online claim. *Id.* The website included a long form of the notice. *Id.* The website (and notice) also provided a toll-free number that class members could call to reach a 24-hour automated phone system with recorded answers to frequently asked questions. *Id.* ¶ 14. The toll-free number had received 78 calls as of August 10, 2022. *Id.*

## V. CONCLUSION

Plaintiffs respectfully request that the Court finally certify the Settlement Class and approve the settlement as fair, reasonable and adequate. A proposed order is attached hereto as Exhibit 2.

RESPECTFULLY SUBMITTED on August 11, 2022.


By: */s/ Edward A. Broderick*
Edward A. Broderick, *Admitted Pro Hac Vice*
ted@broderick-law.com
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue, *Admitted Pro Hac Vice*
mmccue@massattorneys.net

THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Anthony I. Paronich, *Admitted Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100


Andrew W. Heidarpour, *Admitted Pro Hac Vice*
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiffs William Loftus, Sidney Naiman,*
*and Louis Naiman, and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2022, I served the foregoing through the Court's

CM/ECF system, which sent notice to all counsel of record.

By: */s/ Edward A. Broderick*
Edward A. Broderick